IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| INDEPENDENT TRAINING AND APPRENTICESHIP PROGRAM, a California corporation, BRANDIN MOYER, and HAROLD E. NUTTER, INC., a California Corporation, | ) ) ) ) ) | 2:11-cv-01047-GEB-DAD |
| Plaintiffs, | ) ) ) | ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION |
| v. | ) ) | |
| CALIFORNIA DEPARTMENT OF INDUSTRIAL RELATIONS, an agency of the State of California, by and through CHRISTINE BAKER, in her official capacity as Acting Director of the CALIFORNIA DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF APPRENTICESHIP STANDARDS, by and through GLEN FORMAN, in his official capacity as Acting Chief, DIVISION OF LABOR STANDARDS ENFORCEMENT, by and through JULIE SU, in her official capacity as Labor Commissioner, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiffs seek a preliminary injunction enjoining Defendants from, *inter alia,* enforcing California's prevailing wage and apprenticeship laws on three California public works projects.[1] The laws at issue are prescribed in California Labor Code sections 1771, *et seq.*

---

[1] The authority on which Plaintiffs' injunctive relief is based is discussed *infra.*

1

and section 3070, *et seq.* Plaintiffs argue enforcement of these laws on the referenced projects violates the Supremacy Clause, Commerce Clause, Equal Protection Clause, Due Process Clause and Privileges and Immunities Clause in the United States Constitution. Defendants oppose the motion. Argument on the motion was heard on July 18, 2011.

## I. LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). Plaintiffs seeking a preliminary injunction must establish that "(1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest." Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1021 (9th Cir. 2009)(citing Winter, 555 U.S. at 19).

Further, the Ninth Circuit's "'serious questions' approach survives Winter when applied as part of the four-element Winter test." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011). In other words, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Id.

## II. BACKGROUND

**A.   The Fitzgerald Act, the Shelley-Maloney Act, and the De-recognition of California's State Apprenticeship Council for Federal Purposes**

Plaintiffs' injunctive relief request concerns the following congressional enactment act and California laws. "Congress enacted the

Fitzgerald Act [, 29 U.S.C. § 50,] in 1937 for the purposes of protecting apprentices through the establishment of minimum labor standards, promoting apprenticeship as a system of training skilled workers and encouraging the federal government to cooperate with state agencies in formulating apprentice standards." Joint Apprenticeship & Training Council of Local 363, Int'l Bhd. of Teamsters, AFL-CIO v. New York State Dep't of Labor, 984 F.2d 589, 591 (2d. Cir. 1993). The Fitzgerald Act provides in relevant part:

> The Secretary of Labor is authorized and directed to formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices, to extend the application of such standards by encouraging the inclusion thereof in contracts of apprenticeship, to bring together employers and labor for the formulation of programs of apprenticeship, to cooperate with State agencies engaged in the formulation and promotion of standards of apprenticeship....

29 U.S.C. § 50. In 1977, the Department of Labor promulgated regulations, 29 C.F.R. part 29, under the Fitzgerald Act "to establish, for certain Federal purposes, labor standards, policies and procedures for the registration, cancellation and deregistration of apprenticeship programs, and apprenticeship agreements." Apprenticeship Programs, Labor Standards for Regulation, Amendment of Regulations, 72 Fed. Reg. 71020 (Dec. 13, 2007)(summary).

> The[se] regulations establish the [Office of Apprenticeship Training, Employment and Labor Services ("OATELS")], for the purpose of administering the registration and approval of apprenticeship programs and other provisions of the regulations. [OATELS] is authorized to certify apprenticeship standards and to register and approve local apprenticeship programs and apprenticeship agreements for federal purposes. The regulations also authorize [OATELS] to approve appropriate state bodies for registration and/or approval of local apprenticeship programs and agreements for federal purposes.

3

Elec. Joint Apprenticeship Comm. v. MacDonald, 949 F.2d 270, 273 (9th Cir. 1991)(internal quotation marks and citations omitted). Thus, 29 C.F.R. part 29 "provides for a dual system of approval and recognition so that either [OATELS] or the State Apprenticeship Council can approve an apprenticeship program for federal purposes[; h]owever, either agency is constrained in its approval to apply the requirements and standards of the federal regulations." Id.

"To be approved as a [State Apprenticeship Council ("SAC")], a state must submit proof of[, inter alia,] acceptable apprenticeship laws and regulations; . . . a description of the standards, criteria, and requirements for program registration and/or approval; and a description of the policies and operating procedures which depart from or impose requirements in addition to those in the federal regulations." S. Cal. Chapter of Assoc. Builders & Contractors, Inc., Joint Apprenticeship Comm. v. Cal. Apprenticeship Council, 4 Cal. 4th 422, 433 (1992)(internal citations omitted). "If a state does not continue to meet the federal requirements, it may be 'derecognized.'" Id. (citing 29 C.F.R. § 29.13 (1992).)

"In California, apprenticeship training is governed by the Shelley-Maloney Apprenticeship Labor Standards Act of 1939 [("Shelley-Maloney Act")], which is codified as California Labor Code section 3070 et seq." S. Cal. Chapter of Assoc. Builders & Contractors, Inc., Joint Apprenticeship Comm., 4 Cal. 4th at 433. "Pursuant to the Shelley-Maloney Act, apprenticeship training is administered by the Division [of Apprenticeship Standards ("DAS")], which is under the auspices of the Department of Industrial Relations [("DIR")](hereafter Department)." Id. (citation omitted). "The Chief of the [DAS] . . . administers the apprenticeship law . . . and is empowered to investigate

4

and either approve or disapprove written standards for apprenticeship programs." Id. (citations omitted).

California was "authorized under 29 C.F.R. § 29.12 to approve apprenticeship programs for federal purposes as a SAC state [in] 1978." Cal. Div. Of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 320 (1997). However, after California amended its apprenticeship law – California Labor Code § 3075 – in 1999, OATELS "began proceedings to derecognize" California as a SAC state "contending that the amended apprenticeship statute did not conform to federal standards." Cal. Dept. of Indus. Relations, Adm. Rev. Bd. Case No. 05-093, 2007 WL 352459 (Dep't of Labor Jan. 31, 2007) (final decision and order). The United States Department of Labor's Administrative Review Board ultimately withdrew California's recognition as a SAC state on January 31, 2007. Cal. Dept. of Indus. Relations, 72 Fed. Reg. 9590-01 (Dep't of Labor Mar. 2, 2007) (notice). Therefore, California "no longer has the authority to register or oversee apprenticeship programs for 'Federal purposes.'" Id.

**B.   The Three Public Works Projects at Issue**

Plaintiffs' motion concerns the enforcement of California apprenticeship and prevailing wage laws on the following three public works projects (referenced collectively as "state projects"): (1) the Chicago Park Elementary School Multi-purpose/Gymnasium Expansion & Four New Relocatable Classroom Buildings Project in Nevada County, ("Chicago Park Project"); (2) the Marysville High School Alternative Education Center Project in Yuba County, ("Marysville High Project"); and (3) Williams-Brotherhood Joint Use Gym in Stockton, California ("Stockton Project"). The "Chicago Park Project" is a multi-purpose gymnasium and classroom expansion project. (Pls.' Compendium of Evidence in Supp. of

Mot. for Prelim. Inj., Decl. of Michael Genest ¶ 3, ECF No. 6-2 ("Genest Decl.").)

The Treasurer of the State of California used a portion of the proceeds from the sale of "Build America Bonds," which occurred in April 2009 and May 2010, to fund a portion of the Stockton Project and the Chicago Park Project. (Genest Decl. ¶¶ 10a, 10c.) "Build America Bonds" are a new form of municipal bond which are subject to federal taxes. <u>Id.</u> ¶ 8. However, the U.S. Treasury pays a subsidy to the municipal lender to cover the differential costs associated with the taxable nature of the bond. <u>Id.</u>  The Treasurer of the State of California funded the Marysville High Project with funds received from the sell of municipal bonds, which are usually exempt from federal taxation. <u>Id.</u> ¶¶ 5, 10b. Plaintiffs argue that the referenced financing for the state projects causes the projects to be projects for a "federal purpose" under the Fitzgerald Act and its implementing regulations, because of the referenced federal tax incentives involved with funding the projects. (Pls. Mot. for Prelim. Inj. at 21-24.)

### III. DISCUSSION

**A.  Standing / Ripeness of Specific Injunctive Relief Sought**

Plaintiffs request the following specific relief in their preliminary injunction motion:

> [An order] enjoining and prohibiting Defendants . . . :
>
> (a) From refusing to recognize and comply with the United State Department of Labor Administrative Review Board's "Final Decision and Order" of January 31, 2007 and the U.S. Department of Labor's March 2, 2007 public notice, pursuant to 29 C.F.R. 29.13(d), that "the CDIR and the CAC no longer have authority to register or oversee apprenticeship programs for 'Federal purposes' " (72 F.R. 9590).

(b)   From   enforcing   California   Code of Regulations Section 16001 with respect to projects involving "any Federal financial or other assistance, benefit, privilege, contribution, allowance, exemption, preference or right pertaining to apprenticeship;"

(c)   From   enforcing   California   Labor   Code Section 1777.5 with respect to apprentices from federally approved apprenticeship training programs working on public works projects with a Federal purpose;

(d)   From refusing to enforce 29 C.F.R. Part 29 with respect to what constitutes a "Federal purpose;"

(e)   From   refusing   to   acknowledge   that Plaintiff I-TAP is an approved apprenticeship program for all public works projects with a "Federal purpose" in California;

(f)   From refusing to allow contractors to pay Plaintiff I-TAP's apprentices at apprentice prevailing wage rates rather than journeyman prevailing wage rates on public works projects in California with any Federal purpose;

(g)   From refusing to allow Plaintiff I-TAP to receive fringe training contributions as an approved program on such projects;

(h)   Directing Defendants to recognize Brandin Moyer and all other similarly situated electrical tradesmen enrolled in federally certified apprenticeship programs as "apprentices" entitled to all of the "assistance, benefits, privileges, contributions, allowances, exemptions, preferences and/or rights pertaining to apprenticeship" (29 C.F.R. § 29.2) on public works project in California that are accorded to "apprentices" in apprenticeship programs certified by DAS pursuant to the provisions of the California Labor Code;

(i)   Directing Defendants to rescind the Civil Wage and Penalty Assessment issued in Case No. 40-26553/254 as against Plaintiff Harold E. Nutter, Inc.; and

(j)   Directing   Defendants   to   refrain   from purporting to enforce any penalties, assessments or sanctions against Plaintiff Harold E. Nutter, Inc. or any other contractor on the grounds that apprentices participating in I-TAP's apprenticeship training program, or any other federally certified program, do not qualify for payment of apprentice

prevailing wage rates pursuant to California Labor
Code §1777.5.

(Pls.' Mem. of P.&A. in Supp. of Mot. for Prelim. Inj. ("Mot.") 30:22-
32:4.) However, Plaintiffs have not shown that they have standing to
request much of the specific injunctive relief sought and/or that it is
ripe for judicial decision.

        Article III of the Constitution "restricts federal court[]
[jurisdiction] to the resolution of cases and controversies." Davis v.
Fed. Election Commm'n, 554 U.S. 724, 732 (2008). "Two components of the
Article III case or controversy requirement are [the closely related
concepts of] standing and ripeness." Bova v. City of Medford, 564 F.3d
1093, 1095-96 (2009). "To allege a justiciable [request for injunctive
relief], [Plaintiffs] must plead facts that are sufficient to confer
standing and demonstrate that the [request] is ripe for determination."
Dermer v. Miami-Dade Cnty., 599 F.3d 1217, 1220 (11th Cir. 2010).
Further, "[P]laintiff[s] must demonstrate standing separately for each
form of relief sought." Friends of the Earth, Inc. v. Laidlaw Envtl.
Servs., Inc., 528 U.S., 167, 185 (2000)(citations omitted). "[S]tanding
is not dispensed in gross." Lewis v. Casey, 518 U.S. 343, 358 n.6
(1996).

        Specifically, Plaintiffs "must demonstrate three elements
which constitute the 'irreducible constitutional minimum' of Article III
standing." San Diego Cnty. Gun Rights Comm. v. Reno, 98 F.3d 1121, 1126
(9th Cir. 1996)(quoting Lujan, 504 U.S. at 560).

        First, [they] must have suffered an
        "injury-in-fact" to a legally protected interest
        that is both "concrete and particularized" and
        "actual or imminent," as opposed to "'conjectural'
        or 'hypothetical.'" Second, there must be a causal
        connection between [their] injury and the conduct
        complained of. Third, it must be "likely" - not

8

merely "speculative" - that [their] injury will be "redressed by a favorable decision."

Id. (quoting Lujan, at 560-61).

In comparison, "[r]ipeness is peculiarly a question of timing." Thomas v. Union Carbide Agr. Prods. Co., 473 U.S. 568, 580 (1985). "For a suit to be ripe within the meaning of Article III, it must present concrete legal issues, presented in actual cases, not abstractions." Colwell v. Dep't of Health & Human Servs., 558 F.3d 1112, 1123 (9th Cir. 2009). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. U.S., 523 U.S. 296, 300 (1998)(internal quotation marks and citation omitted).

In many cases, "the constitutional component of the ripeness inquiry" "coincides squarely with standing's injury in fact prong." Sacks v. Office of Foreign Assets Control, 466 F.3d 764, 773 (9th Cir. 2006).

> For example, a claim is not ripe for adjudication if it rests upon contingent future events . . . . That is so because, if the contingent events do not occur, the plaintiff likely will not have suffered an injury that is concrete and particularized enough to establish the first element of standing. In this way, ripeness and standing are intertwined.

Id.

Part of the injunctive relief Plaintiffs seek essentially asks the Court to address their conjectural concern that Defendants could enforce California's apprenticeship and prevailing wage laws on any public works project that has a "federal purpose." However, this concern "is contingent upon events [that may not occur,]" and has not been shown to be "concrete and particularized enough to survive the standing/ripeness inquiry." Bova, 564 F.3d at 1096-97. Therefore, this

1   concern has not been shown ripe for adjudication, and the issue is
2   whether Plaintiffs have a basis for enjoining the state projects. See
3   generally, Lewis, 518 U.S. at 343 n.6 (stating "[i]f the right to
4   complain of one administrative deficiency automatically conferred the
5   right to complain of all administrative deficiencies, any citizen
6   aggrieved in one respect could bring the whole structure of state
7   administration before the courts for review. That is of course not the
8   law").

9       **B.   Likelihood of Success on the Merits**

10          **1.   Supremacy Clause Claim**

11          Plaintiffs argue Defendants' enforcement of California's
12  apprenticeship and prevailing wage laws on the state projects violates
13  the Supremacy Clause of the United States Constitution because the
14  subject California law "violate[s] [the] national standard" created by
15  the Fitzgerald Act and its implementing regulations. (Mot. 15:15, 17:20-
16  18:1, 20:15-18, 24:13-25:20.)  This argument concerns the issue whether
17  Congress intended the Fitzgerald Act to preempt the subject California
18  law.

19          "[T]he Supremacy Clause, U.S. Const., Art. VI, cl. 2,
20  invalidates state laws that interfere with, or are contrary to federal
21  law." Hillsborough Cnty., Fla. v. Automated Med. Labs., Inc., 471 U.S.
22  707, 712 (1985)(internal quotation marks and citations omitted).

23          Congressional intent to preempt state law can
        either be expressed in statutory language or
24      implied from the scheme of federal regulation.
        Implied pre-emption comes in two forms: field and
25      conflict preemption. Field preemption occurs when
        the federal regulation is sufficiently
26      comprehensive to leave no room for supplementary
        state regulation. Conflict preemption, in turn,
27      arises when: (1) compliance with both federal and
        state regulations is a physical impossibility, or
28      (2) state law stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress.

Gaeta v. Perrigo Pharm. Co., 630 F.3d 1225, 1230-31 (9th Cir. 2011)(internal quotation marks and citations omitted). However, Plaintiffs concede in their Reply that Defendants "[are] free to regulate apprenticeship for solely state purposes (i.e., where there is *no* Federal purpose by the D.O.L regulatory definition)[.]" (Reply 13:18-21.) Therefore, Plaintiffs' Supremacy Clause claim is based on the contention that the state projects have a "federal purpose" prescribed in 29 C.F.R. § 29.2, since the projects are funded, at least in part, by municipal bonds that receive a benefit from a "Federal income tax exemption for interest paid" on the bonds, or a Federal "subsidy to the municipal lender [that] cover[s] the differential interest costs associated with the . . . bonds." (Mot. 21:12-18, 22:7-16.)

Defendants counter that enforcement of the subject California apprenticeship and prevailing wage laws on these projects is not preempted by the Fitzgerald Act because the referenced public works projects involve "state contract[s] for public construction[,]" which are not within the "federal purpose" definition in 29 C.F.R. § 29.2. (Opp'n 10:4-7, 10:23-26.) Defendants also argue that Plaintiffs' Supremacy Clause claim "reach[es] too far," "by stretching the meaning of the phrase 'federal purposes pertaining to apprenticeship' beyond any reasonable interpretation." Id. at 10:15-18, 27. Defendants further argue that the projects do not involve "federal financial or other assistance pertaining to apprenticeship[; i]nstead, there is federal tax exemption . . . that pertains to investors, not apprentices." Id. 10:24-26.

29 C.F.R. § 29.2 prescribes "federal purposes" to include: "any Federal contract, grant, agreement or arrangement *dealing with*

11

*apprenticeship*; and any Federal financial or other assistance, benefit, privilege, contribution, allowance, exemption, preference or right *pertaining to apprenticeship*." (emphasis added). Plaintiffs have not shown that what they characterize as federal tax benefits constitute a "federal purpose" prescribed in § 29.2. Plaintiffs' construction of "federal purpose" in § 29.2 "reads the words ['Federal' and 'pertaining to apprenticeship'] into thin air[,]" contrary to the court's duty in interpreting a regulation "to give effect, if possible, to every clause and word" of the regulation. Ramadan v. Keisler, 504 F.3d 973, 976 (9th Cir. 2007) (citation omitted). "It is a fundamental cannon of statutory construction that a statute should not be construed so as to render any of its provisions mere surplusage." United States v. Wenner, 351 F.3d 969, 975 (2003).

Plaintiffs rely upon two opinion letters written by the Administrator of OATELS as support for their argument that § 29.2's definition of "federal purpose" encompasses what they characterize as federal benefits which are sufficient to make the "state projects" projects that are with § 29.2's definition of "federal purpose." (Mot. 15:2-7; Reply 7:20-8:1.) The referenced opinion letters were written in response to inquiries concerning the status of apprenticeship programs registered by OATELS in California and predate OATELS' de-recognition of the California Department of Industrial Relations and the California Apprenticeship Council as an SAC for federal purposes under the Fitzgerald Act. The first opinion letter is dated July 16, 2004, and states in pertinent part:

> DOL's position is that all SAC's, including California's, are to accept programs and apprentices registered by OATELS, for Federal purposes, on all federally funded or supported public works projects, regardless of how much Federal funding or support is provided.

> Accordingly, the Department expects the SACs to accept OATELS registration for an entire public works project, even if the project is funded in part by the state or local government.

(Pls.' Compendium of Evidence in Supp. of Mot. for Prelim. Inj., Decl. of Juli Nutter, Ex. B, ECF No. 6-2, at 89.)   The second opinion letter, dated October 4, 2004, states in relevant part: "OATELS' registered apprentices must be recognized as registered apprentices for the purposes of all public works projects funded in whole or part with Federal funds." Id., at 91.

Assuming arguendo that these opinion letters support Plaintiffs' argument that "federal purpose" is defined broadly enough to include a federal financial benefit as tangential as a tax exemption or tax subsidy provided to a municipal lender, this interpretation would not be entitled to deference. "Interpretations . . . in opinion letters-like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law-do not warrant Chevron-style deference." Christensen v. Harris Cty., 529 U.S. 576, 587 (2000) (citations omitted). "Instead, interpretations contained in formats such as opinion letters are 'entitled to respect' under [the Supreme Court's] decision in Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), but only to the extent that those interpretations have the 'power to persuade[.]'" Id. (citation omitted). Like Plaintiffs' construction of "federal purpose," these two opinion letters render the terms "Federal" and "pertaining to apprenticeship" in § 29.2 mere surplusage. Therefore, even assuming arguendo that the opinion letters could be interpreted as broadly as Plaintiffs argue, that interpretation would be unpersuasive and would not be "entitled to respect."

1    For the stated reasons, Plaintiffs have not shown that the
2    challenged California law and projects conflict with federal law.
3    Therefore, they have not shown a likelihood of success, nor raised
4    serious questions, on the merits of their Supremacy Clause claim.

5    **2.   Commerce Clause Claim**

6    Plaintiffs also argue Defendants' enforcement of California's
7    apprenticeship and prevailing wage laws on the three referenced public
8    works projects "constitutes an unjustifiable interference with
9    interstate commerce in violation of the [Commerce Clause of the United
10   States Constitution,] because it prevents thoroughly qualified
11   apprentices from programs approved by the U.S. DOL in the other forty-
12   nine states from pursuing public work employment opportunities within
13   California." (Mot. 26:12-19.)

14   The Commerce Clause of the United States Constitution provides
15   "[t]he Congress shall have Power . . . [t]o regulate Commerce . . .
16   among the several States."  Art. I, § 8, cl. 2. "[T]he Clause has long
17   been understood to have a 'negative' [or dormant] aspect that denies the
18   States the power unjustifiably to discriminate against or burden the
19   interstate flow of articles of commerce." Or. Waste Sys., Inc. v. Dep't
20   of Environmental Quality, 511 U.S. 93, 99 (1994); see also Brown v.
21   Hovatter, 561 F.3d 357, 364 (4th Cir. 2009) (stating "[t]he dormant
22   Commerce Clause is implicated by burdens placed *on the flow of*
23   *interstate commerce commerce*-the flow of goods, materials, and other
24   articles of commerce across state lines" (emphasis in original)).

25   Plaintiffs make no showing that California's regulation of
26   its apprenticeship programs through its prevailing wage and
27   apprenticeship laws has any relationship to the flow of articles of
28   inter-state commerce.

14

1   Therefore, Plaintiffs have not shown a likelihood of success,
2   nor raised serious questions, on the merits of their Commerce Clause
3   claim.

4   **3.   Equal Protection Clause Claim**

5   Plaintiffs also argue that Defendants are enforcing a
6   classification in violation their Equal Protection rights that favors
7   apprenticeship programs already certified under state law while programs
8   certified under federal law are "economically disfavored and burdened
9   with rules so restrictive they effectively prevent individuals and
10  businesses from participating in California's economy through
11  apprenticeship programs operating in the state." (Mot. 27:25-28:4.)

12  "The first step in equal protection analysis is to identify
13  the state's classification of groups." Country Classic Dairies v.
14  Montana, Dep't of Commerce Milk Control Bureau, 847 F.2d 593, 596 (9th
15  Cir. 1988). "Once the plaintiff establishes governmental classification,
16  it is necessary to identify a 'similarly situated' class against which
17  the plaintiff's class can be compared." Freeman v. City of Santa Ana, 68
18  F.3d 1180, 1187 (9th Cir. 1995) (citation omitted). "The Equal
19  Protection Clause 'is essentially a direction that all persons similarly
20  situated should be treated alike.'" Christian Legal Soc'y Chapter of
21  Univ. Of Cal. v. Wu, 626 F.3d 483, 487 (9th Cir. 2010) (citing City of
22  Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). An equal
23  protection claim will not lie by conflating all persons not injured into
24  a preferred class receiving better treatment than the plaintiff.
25  Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

26  Plaintiffs have not shown that federal apprenticeship programs
27  and California apprenticeship program are "similarly situated" for
28  purposes of an Equal Protection claim. Further, Plaintiffs' purported

15

class has not been shown to be similarly situated to any individual
approved to participate in California's apprenticeship program.

Therefore, Plaintiffs have not shown a likelihood of success,
nor raised serious questions, on the merits of their Equal Protection
claim.

### 4.   Due Process Clause claims

Plaintiffs also argue that Defendants actions, which
"require[] contractors to use only California-certified apprentices" and
"preclude[] federally certified apprenticeship programs and their
enrollees from participating in public works projects in California",
"deprive [P]laintiffs of liberty – the right to pursue a lawful
occupation" in violation of their substantive due process rights. (Mot.
26:25-28:13.)

"Substantive due process forbids the government from depriving
a person of life, liberty, or property in such a way that shocks the
conscience or interferes with the rights implicit in the concept of
ordered liberty." Corales v. Bennett, 567 F.3d 554, 568 (9th Cir. 2009).
"To establish a violation of substantive due process, a plaintiff must
first show a deprivation of some fundamental right or liberty interest
that is deeply rooted in this Nation's history and tradition."
Tutor-Saliba Corp. v. City of Hailey, 452 F.3d 1055, 1061 (9th Cir.
2006) (internal quotation and citation omitted). "The protections of
substantive due process have for the most part been accorded to matters
relating to marriage, family, procreation, and the right to bodily
integrity[,]" and "the [Supreme] Court has always been reluctant to
expand the concept of substantive due process because the guideposts for
responsible decisionmaking in this uncharted area are scarce and
open-ended." Albright v. Oliver, 510 U.S. 266, 271-72 (1994).

1    Plaintiffs have not shown that any fundamental right or liberty
2    interest is implicated in this case.

3        At the hearing on their motion Plaintiffs also indicated they
4    have also allege a procedural due process claim but made only a
5    conclusory unpersuasive oral argument in support of this claim.

6        For the stated reasons, Plaintiffs have not shown that they
7    have not shown a likelihood of success, nor raised serious questions, on
8    the merits of their Due Process claims.

9              **5.   Privileges & Immunities Clause Claim**

10       Lastly, when the court was sua sponte considering whether
11   subject matter jurisdiction exist in this action, it became aware that
12   Plaintiffs also allege that the California subject laws violate the
13   Privileges and Immunities Clause of the United States Constitution. (<u>See</u>
14   Compl. ¶ 9.)

15       "Discrimination on the basis of out-of-state residency is a
16   necessary element for a claim under the Privileges and Immunities
17   Clause." <u>Russell v. Huq</u>, 275 F.3d 812, 821 (9th Cir. 2002).   However,
18   Plaintiffs' allegations are woefully insufficient to allege a claim
19   under the Privileges and Immunities Clause a claim under the Privileges
20   and Immunities Clause.

21       **B. Irreparable Harm / Balance of the Equities / Public Interest**

22       Since Plaintiffs have failed to show a likelihood of success,
23   or raise a serious question, on the merits of any claim, the three
24   remaining injunction factors need not be addressed. <u>See</u> <u>Doe v. Reed</u>, 586
25   F.3d 671, 681 n.14 (9th Cir. 2009)(stating: "Because we conclude that
26   Plaintiffs have failed to satisfy the first <u>Winter</u> factor-likelihood of
27   success on the merits-we need not examine the three remaining Winter
28   factors . . . ").

## IV. CONCLUSION

For the stated reasons, Plaintiffs' motion for a preliminary injunction is DENIED.

Dated:  August 15, 2011

GARLAND E. BURRELL, JR.
United States District Judge